# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ANDRE D. WASHINGTON,
      Petitioner,

vs.

WARDEN, NORTH CENTRAL
CORRECTIONAL INSTITUTION,
      Respondent.

Case No. 1:18-cv-709

Dlott, J.
Bowman, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Madison Correctional Institution, has filed a

pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is

before the Court on respondent's motion to dismiss (Doc. 11), and petitioner's response in

opposition (Doc. 15). Also before the Court is petitioner's motion to stay and motion to

amend/correct. (Doc. 6, 13).

For the reasons stated below, the undersigned recommends that the petition be denied and

respondent's motion to dismiss be denied as moot.[1]  Petitioner's motion to stay and motion to

---

[1] Respondent has moved to dismiss the petition on the ground that it is time-barred. (Doc. 11). Petitioner contends that the trial court's November 23, 2016 *nunc pro tunc* judgment entry constituted a "new judgment" that operated to reset the statute of limitations in this case. Because petitioner's ground for relief are either non-cognizable or procedurally defaulted, the Court need not determine whether the petitioner is timely.

Although respondent has not asserted a waiver defense in the motion to dismiss, in the absence of a deliberate and knowing forfeiture of the defense by respondent, this Court may in its discretion raise the issue *sua sponte* as long as the petitioner is afforded an opportunity to present arguments on the issue. *See, e.g., Raglin v. Mitchell,* No. 1:00cv767, 2013 WL 5468227, at *10-11 (S.D. Ohio Sept. 29, 2013) (Barrett, J.) (and cases cited therein); *Heft v. Warden, Madison Corr. Inst.,* No. 2:11cv103, 2012 WL 1902467, at *19 n.10 (S.D. Ohio May 25, 2012) (King, M.J.) (Report & Recommendation) (citing *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005)), *adopted,* 2012 WL 3064131 (S.D. Ohio July 27, 2012) (Frost, J.); *Thompson v. Anderson,* No. 1:08cv2913, 2010 WL 4025936, at *7 (N.D. Ohio Mar. 19, 2010) (Perelman, M.J.) (Report & Recommendation), *adopted,* 2010 WL 4026121, at *8 (N.D. Ohio Oct. 13, 2010) (Lioi, J.); *Schuler v. Hudson,* No. 1:08cv456, 2009 WL 3563164, at *1, *10 (S.D. Ohio Oct. 30, 2009) (Barrett, J.; Hogan, M.J.) (citing *Lorraine v. Coyle,* 291 F.3d 416, 426 (6th Cir. 2002); *Elzy v. United States,* 205 F.3d 882, 886 (6th Cir. 2000)); *see also Wood v. Milyard,* 566 U.S. 463, 466 (2012); *Day v. McDonough,* 547 U.S. 198, 209-10 (2006). In this case, because petitioner has the opportunity to be heard on the matter by way of objections to the instant Report and Recommendation, "the district court does not abuse its discretion in *sua sponte* raising the issue of procedural default." *See Schuler, supra*, 2009 WL 3563164, at *10 (and cases cited therein); *see also Heft, supra,* 2012 WL 1902467, at *19 n.10; *Thompson, supra,* 2010 WL 4025936, at *7 n.4.

amend/correction should also be denied.

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's

conviction and sentence:[2]

> During the early afternoon of February 5, 2003, Jeremy Kotzbauer was working alone at his family's business, Natural Life Nutrition, when Washington came into the store and told Jeremy that somebody was "peeping" his car. Concerned, Jeremy looked out into the parking lot. (We use first names to distinguish between the Kotzbauer brothers.) Seeing nothing unusual, Jeremy turned around to find Washington pointing a gun at his face and demanding all the money in the cash register. Jeremy took the money out, placed it in a brown paper bag, and gave it to Washington. Washington then demanded the keys to Jeremy's car. As Washington took Jeremy to the back room to get his car keys, Jeremy tripped the silent alarm.
>
> Washington left the store, got into Jeremy's car, and drove away. As Washington left, Jeremy's brother, Nathan, pulled into the parking lot. Jeremy told his brother what had happened, and Nathan proceeded to follow Jeremy's car. For the next twenty minutes, Nathan followed Washington as he drove Jeremy's car. In the futile hope of hastening his escape, Washington decided to take Jeremy's car onto northbound Interstate 75, where Nathan continued to follow. Unfortunately for Washington, a traffic accident made the typically bottlenecked traffic on the interstate even slower than usual. As they drove on the interstate, Nathan spotted an Arlington Heights police cruiser pulled over on the shoulder. Officer Chris Bundrew was issuing another driver a traffic citation. Nathan informed Bundrew of what had occurred. Bundrew then joined the pursuit.
>
> Shortly thereafter, Bundrew stopped Jeremy's car. The driver got out of Jeremy's car, lay on the ground, and was placed in custody. Of course, the driver was Washington, and a search of his person uncovered the stolen money as well as some crack cocaine in his pocket. A search of Jeremy's car turned up the gun used in the robberies. Jeremy later described the robber as an African-American male, roughly between 6'2" and 6'3", of unknown weight, and wearing a winter jacket, skullcap, and blue gloves.

_____

[2] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. _See McAdoo v. Elo,_ 365 F.3d 487, 493-94 (6th Cir. 2004).

Later that night, the police showed Jeremy a one-man holding area where they were keeping Washington. They had already told Jeremy that they had the man who had robbed the store and now asked Jeremy if he could identity that man. Jeremy identified Washington as the robber. Nathan was shown a Polaroid photograph of only Washington and asked if the person in the photograph was the robber. Nathan identified Washington's picture as the person who had robbed his brother and the store.

(Doc. 10, Ex. 9 at PageID 100-102).

## II. PROCEDURAL HISTORY

### State Trial Proceedings and Direct Appeal

On February 14, 2003, the Hamilton County, Ohio, grand jury returned a five-count indictment charging petitioner with two counts of aggravated robbery, two counts of robbery, and one count of possession of cocaine. (Doc. 10, Ex. 1). Petitioner entered a plea of not guilty to all charges. (Doc. 10, Ex. 2).

On August 20, 2003, following a jury trial, petitioner was convicted of all charges. (Doc. 10, Ex. 3). Petitioner was sentenced to serve a total aggregate prison sentence of twenty years in the Ohio Department of Corrections on September 5, 2003. (*See* Doc. 10, Ex. 4). Specifically, petitioner received consecutive, eight-year prison terms for his aggravated robbery convictions: one count based on the theft of currency from the Natural Life Nutrition Center and the other based on the theft of a motor vehicle from Jeremy Kotzbauer. Petitioner was sentenced to two three-year gun specifications on these counts, which were ordered to be served concurrently, but consecutive to the sentences imposed for his other convictions. For his possession of cocaine conviction petitioner received a one-year prison sentence. Finally, the two counts of robbery (one for the Natural Life Nutrition Center and one for Jeremey Kotzbauer) were merged with the

respective aggravated robbery counts. (*See id.*).

On September 23, 2003, through different counsel, petitioner filed a timely notice of appeal to the Ohio Court of Appeals. (Doc. 10, Ex. 6). In his appellate brief, petitioner raised the following two assignments of error:

1. The jury committed prejudicial error in finding Washington guilty of Aggravated Robbery, Robbery, and Possession of Cocaine as the verdict was against the manifest weight of the evidence.

2. The identification of Andre Washington by Nathan Kotzbauer and Jeremy Kotzbauer should be suppressed as it was unreasonably suggestive and violated Washington's right to a fair trial under the Ohio and United States Constitutions.

(Doc. 10, Ex. 7). By judgment entry entered on November 3, 2004, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 10, Ex. 9).

Petitioner did not seek further review in the Ohio Supreme Court.

**Motion for a New Trial**

On May 25, 2010, several years later, petitioner filed a "delayed motion for a new trial to correct a void judgment or sentence and defective indictment of robbery and aggravated robbery." (Doc. 10, Ex. 10). Petitioner challenged his indictment for not expressly charging the *mens rea* element for the aggravated robbery and robbery charges. On May 24, 2010, the trial court denied petitioner's motion. (Doc. 10, Ex. 12).

Petitioner filed an appeal to the Ohio Court of Appeals from the trial court's judgment. (Doc. 10, Ex. 13). However, on November 12, 2010, the Ohio appeals court dismissed the appeal for petitioner's failure to file an appellate brief. (Doc. 10, Ex. 14).

Petitioner did not seek further review in the Ohio Supreme Court.

## Application to Reopen Appeal

Next, on February 9, 2012, petitioner filed an application to reopen his appeal pursuant to Ohio App. R. 26(B). (Doc. 10, Ex. 15). Petitioner argued that his appellate counsel was ineffective for failing to raise a claim that his convictions amounted to allied offenses of similar import under Ohio Rev. Code § 2941.25. (*See id.*). On March 7, 2012, the Ohio Court of Appeals denied petitioner's application, finding that petitioner failed to provide sufficient reasons for his failure to file a timely application. (Doc. 10, Ex. 17).

Petitioner did not file an appeal to the Ohio Supreme Court.

## Motion to Vacate

On April 11, 2016, petitioner filed a motion to vacate a void sentence. (Doc. 10, Ex. 19). Petitioner argued that he was not advised of the length of his post-release control term or the consequences of violating its terms. The trial court appointed petitioner counsel and, on August 31, 2016 held a hearing. (Doc. 10, Ex. 20). During the hearing, petitioner argued that because post-release control was not properly imposed that his sentence was void and that petitioner should be entitled to a new sentencing hearing, during which he would argue that his two aggravated robbery convictions were allied offenses of similar import and should merge for the purposes of sentencing. (*See* Doc. 10-2, Trans. at PageID 330–31).

On August 31, 2016, the trial judge advised petitioner that he will be subject to mandatory post-release control for five years once he has served his sentence and of the consequences for violating its terms. (*See id.* at PageID 335-36). The trial court otherwise left

the original sentence undisturbed.[3]  Petitioner's motion to vacate was denied by the trial court on

September 19, 2016.  (Doc. 10, Ex. 22).  A *nunc pro tunc* sentencing entry was issued on

November 23, 2016, imposing the same sentence but including the post-release control

information.  (*See* Doc. 10, Ex. 21).

On September 6, 2016, petitioner filed a notice of appeal and motion to appoint counsel

in the Ohio Court of Appeals.  (Doc. 10, Ex. 23, 24).  Petitioner's motion for counsel was

granted.  (Doc. 10, Ex. 25).  Petitioner, through counsel, raised the following two assignments of

error in his appellate brief:

1. The trial court erred by failing to comply with the principles and purposes of
   sentencing at a *de novo* resentencing hearing.

2. The trial court erred when it failed to merge allied offenses of similar import
   under R.C. 2941.25 and as such prison on the firearm specifications on those
   counts cannot be given.

(Doc. 10, Ex. 27).   On August 9, 2017, the Ohio Court of Appeals overruled petitioner's

assignments of error and affirmed the decision of the trial court.  (Doc. 10, Ex. 29).  The appeals

court ruled that the trial court properly limited the scope of the resentencing hearing to the

imposition of post release control and that petitioner's allied offenses assignment of error should

have been brought on direct appeal and was now barred under the doctrine of *res judicata*.  (*See*

*id.*).[4]

---

[3] The trial court noted that it appeared that petitioner should have been sentenced to consecutive sentences on his
firearm specifications, which would result in a twenty-three-year sentence as opposed to the twenty-year sentenced
originally imposed.  However, the trial court stated that it would not disturb the sentence as originally imposed.  (*See*
Doc. 10-2, Trans. at PageID 334–35).

[4] Petitioner subsequently filed a "Motion Invoking Appellate Court's Inherent Power to Vacate its Void Judgment."
(Doc. 10, Ex. 30).  Petitioner moved the Ohio appeals court to vacate its 2003 direct appeal decision.  The Ohio
Court of Appeals overruled the motion on December 5, 2017.  (*See* Doc. 10, Ex. 48).

On October 4, 2017, petitioner filed a notice of appeal and motion for delayed appeal to the Ohio Supreme Court. (Doc. 10, Ex. 32, 33). Petitioner claimed that he could not timely file a notice of appeal because he was not notified that a pass was issued for him to access the mailroom in time. (*See* Doc. 10, Ex. 33). On December 6, 2017, the Ohio Supreme Court denied petitioner's motion for a delayed appeal. (Doc. 10, Ex. 34).

### Motion to Vacate a Void and Illegal Sentence

On June 1, 2018, petitioner filed a motion to vacate a void and illegal sentence. (Doc. 10, Ex. 35). The trial court denied petitioner's motion on June 12, 2018, finding that the issues raised by petitioner "had to be raised in a direct appeal and are now barred by res judicata." (Doc. 10, Ex. 36).

### Motions to Vacate Judgment

Next, on October 2, 2018, petitioner filed a motion to vacate judgment in the Ohio Court of Appeals, seeking to vacate his 2016 sentence. (Doc. 10, Ex. 37). On the same day, petitioner filed a "Motion for Notice of Filing of Judgments Pursuant to Ohio Civ. R. 58(B)." (Doc. 10, Ex. 38). These motions were filed in the Ohio Court of Appeals case number C-1800571, in which petitioner appealed the denial of a motion for judicial release. On October 16, 2018, the Ohio Court of Appeals dismissed his appeal.[5]

Petitioner also filed another motion to vacate his 2003 sentence in the trial court on October 10, 2018, arguing that his 2003 sentence was void because he should have been

---

[5] Viewed at https://www.courtclerk.org under case number C 10800571. This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Lets*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

sentenced separately on each aggravated robbery conviction.  (Doc. 10, Ex. 39).  To date, petitioner's motion has not been ruled on by the trial court.

## Writs of Mandamus

On March 7, 2018, petitioner filed a complaint seeking a writ of mandamus in the Supreme Court of Ohio.  (Doc. 10, Ex. 40).  By entry issued on May 23, 2018, the Ohio Supreme Court dismissed the action.  (Doc. 10, Ex. 42).

Petitioner filed a second complaint for a writ of mandamus on December 3, 2018, which was dismissed by the Ohio Supreme Court on February 13, 2019.[6]  (Doc. 10, Ex. 43).

Petitioner also filed a motion for the Ohio Supreme Court to take judicial notice on January 7, 2019, which was denied as moot on February 13, 2019.

## Federal Habeas Corpus

On September 11, 2018, petitioner commenced the instant federal habeas corpus action. (Doc. 1).  (Doc. 1).  Petitioner raises the following two grounds for relief in the petition:

> **GROUND ONE:** Court failed to comply with principles and purposes of sentencing at de novo resentencing hearing. R.C. 2929.11

> Mr. Washington was denied due process of law under the United States Constitution, the sentence imposed is clearly and convincingly contrary to law, disproportionate to the crime committed and was not supported by the record . . . when the court failed to comply with the principal and purpose of sentencing at a de novo sentencing hearing.  Thus also violating his 6th and 8th Amendment of the United States Constitution.

> **Supporting Facts:** Appellant claims that his 8th Amendment to the U.S. Constitution and Article I Section 10 of the Ohio Constitution were violated.  Also his 14th Amendment right to due process and his 5th Amendment, 6th Amendment of the United States Constitution and Ohio Article I Section 10.

---

[6] Viewed at www.supremecourt.ohio.gov/Clerk/ecms/#/search under Case No. 2018-1713.

During sentencing the judge was to consider the case with similar situated offender throughout every district of the state. Then determine a fair and just sentence, petitioner pointed out that he was a first time offender, that was sentenced incorrectly and the decision was contrary to, or unreasonably application of clearly established federal law. Yet the court advised petitioner of the terms and consequences of post-release control and handed out the same sentence.

On April 11, 2016, Mr. Washington filed a pro se motion to vacate a void sentence, as he was never informed of the precise length of the terms and consequences of parole. Petitioner claimed that a sentence lacking any mandatory sentencing provisions is void. A judgment that is void is treated as though the proceedings never occurred; the judgment is a mere nullity and the parties are in the same position as if there had been no judgment. Finally trial courts have jurisdiction to review and correct a void judgment

**GROUND TWO:** Trial court failed to merge allied offenses of similar import.

Mr. Washington was denied due process of law under the Fourteenth Amendment of the United States Constitution and he was also denied the protection of the Fifth Amendment of the United States Constitution. At the de novo sentencing hearing Mr. Washington believed that the two aggravated robberies that were ordered to run consecutively . . . should have been merged as there was only one incident, one desired intent, one victim, meaning one act of harm was expressed.

**Supporting Facts:** Trial court ran sentence consecutive imposing two separate individual terms of imprisonment, after concluding sentence was allied. During the de novo sentencing hearing the prosecutor must select which charges to pursue. The state and the court after selection of the charges then the rest of the offenses must be merged for the purposes and principles of sentencing. The indictment read five counts along with gun specification. Count one aggravated robbery, count two robbery were merged, also count three aggravated robbery, count four robbery were merged. So therefore the court concluded that two offenses were allied offenses of similar import, yet imposed two separate individual sentences which was prohibited. This act and decision was contrary to, and an unreasonable application of clearly established federal law. When the court came to the conclusion that the sentences were merger eligible yet impose consecutive sentences . . . the sentence is void because it lacked a mandatory provision of a sentencing statute

(*Id.* at PageID 7, 10).

Respondent has filed a motion to dismiss the petition (Doc. 9), to which petitioner has

responded. (Doc. 11). According to respondent, petitioner's grounds for relief are time-barred.

Specifically, respondent contends that petitioner's 2016 *nunc pro tunc* sentencing entry did not restart the statute of limitations period because it served to only correct a clerical error in the original sentencing order. (*See* Doc. 11 at PageID 353–55). Because, as respondent sees it, the 2016 entry did not constitute a "new, worse-than-before sentence" it does not reset the limitations period under *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2015).[7]

### Motion to Stay and to Amend/Correct

After filing the petition, petitioner filed a motion to stay this action. (Doc. 6). Petitioner stated that he had an appeal pending in the First District Court of Appeals at the time. (*See id.* at PageID 34). Petitioner subsequently clarified that he sought the stay on the basis of his December 3, 2018 complaint for a writ of mandamus in the Ohio Supreme Court, a January 7, 2019 motion for the Ohio Supreme Court to take judicial notice, and October 10, 2018 motion to vacate pending in the trial courts. (*See* Doc. 13 at PageID 366). To date, the Ohio courts have ruled on petitioner's motions, with the exception of his motion to vacate, which remains pending in the trial court.

Petitioner also filed a motion to amend/correct. (Doc. 13). Petitioner seeks to amend his petition to include two ineffective assistance of counsel claims. First, he claims that trial counsel was ineffective for failing to object to the imposition of consecutive sentences on his aggravated robbery convictions, which he maintains were allied offenses of similar import under Ohio Rev. Code § 2941.25. Second, petitioner claims that appellate counsel was ineffective for failing to

---

[7] In his September 20, 2003 initial sentencing hearing, petitioner was advised by the trial court that he "could have up to five years of post-release control." (Doc. 10-1, Trans. at PageID 324). The judgment entry did not specify the term and instead simply stated that "as part of the sentence in this case, the defendant is subject to the post release control supervision of R.C. 2967.28." (Doc. 10, Ex. 4 at PageID 66). As noted above, the 2016 *nunc pro tunc* sentencing entry imposed a five years of post-release control. (*See* Doc. 10, Ex. 21 at PageID 142).

attack his consecutive sentences on appeal following his *de novo* resentences.

### III. THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600.

As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 38–40 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 565 U.S. at 38, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision*.'" *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

## A. Ground One is not cognizable

In Ground One of the petition, petitioner claims that the Ohio trial court failed to comply

with the principles and purposes of sentencing at a *de novo* resentencing hearing, pursuant to Ohio Rev. Code § 2929.11.  (Doc. 1).

This Court has jurisdiction to review petitioner's claim only to the extent that petitioner challenges his confinement based on an alleged violation of the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").  Because habeas review is limited to claims implicating federal concerns, this Court lacks jurisdiction to consider any claim that the trial court erred by failing to comply with Ohio Rev. Code § 2929.11 or other Ohio sentencing laws.  *See Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003) (finding a challenge to state court's interpretation and application of its sentencing laws and guidelines to be a matter of state law not cognizable in a federal habeas corpus proceeding).

Petitioner also fails to raise a cognizable ground for federal habeas relief to the extent that he maintains that he was entitled to a *de novo* resentencing hearing.  *See e.g. Jones v. Warden*, No. 1:12-cv-170, 2013 WL 1324406, at *1 (Barrett, J.; Bowman, M.J.) (S.D. Ohio Feb. 2, 2013) (Report and Recommendation) (finding claim that the state trial court failed to conduct a *de novo* resentencing hearing properly informing the petition of post-release control raised issues of state law not cognizable on federal habeas corpus), *adopted* , 2013 WL 1315963 (S.D. Ohio Mar. 28, 2013); *Crosby v. Bradshaw*, No. 1:12-cv-762, at *11 (N.D. Ohio Nov. 30, 2012) (Report and Recommendation) (finding that allegations of a violation of Ohio law in informing

the petitioner of post-release control raised issues of state law not cognizable on habeas review), *adopted*, 2013 WL 1773820 (N.D. Ohio Apr. 25, 2013).

Although petitioner generally claims that these errors resulted in a violation of his due process and other constitutional rights, petitioner's claim is based solely on alleged violations of Ohio statutes or state law governing resentencing,[8] which as discussed above, falls outside this Court's authority to consider. *Cf. Bennett v. Turner*, No. 1:12cv489, 2013 WL 557013, at *3 (N.D. Ohio Jan. 23, 2013) (Report & Recommendation) (rejecting the habeas petitioner's attempt to cast his claim of sentencing error under Ohio law "in constitutional terms by stating his 'sentence was not given according to due process and equal protection' "), *adopted*, 2013 WL 518704 (N.D. Ohio Feb. 12, 2013).[9]

Accordingly, petitioner is not entitled to federal habeas relief based on Ground One of the petition.

## B. Ground Two

In Ground Two, petitioner argues that the trial court erred by failing to merge his aggregated assault convictions as allied offenses of similar import. As indicated above, petitioner was found guilty of two counts of aggravated robbery: one count based on his theft of

---

[8] Specifically, in overruling petitioner's assignment of error that he was entitled to a *de novo* resentencing (during which he sought to raise the allied offenses argument raised in Ground Two), the Ohio Court of Appeals explained that the Ohio Supreme Court has held that in order to properly impose postrelease control, "the new sentencing hearing to which an offender is entitled . . . is limited to the proper imposition of postrelease control" and "the doctrine of res judicata still applies to other aspects of the merits of the conviction." (Doc. 10, Ex. 29 at PageID 184).

[9] The undersigned notes that even if petitioner had stated a cognizable claim for federal habeas relief in Ground One, petitioner procedurally defaulted and waived any such claim by failing to raise the alleged errors as constitutional violations on appeal from the resentencing (*see* Doc. 10, Ex. 27) and by failing to submit a timely appeal to the Ohio Supreme Court. (*See* Doc. 10, Ex. 32, 34).

currency from the Natural Life Nutrition Center and one count based on the theft of a motor vehicle from the store employee. (*See* Doc. 10, Ex. 1).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson,* 459 U.S. at 6; *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the default of a federal claim in the state court may preclude federal habeas review if the state court judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner fails to comply with a state procedural rule that required him to have done something at trial to preserve the issue for appellate review.  *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar.  *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[10]  In

---

[10] In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief.  *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489

cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "actual prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478,

---

U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner attempted to raise the claims asserted in Ground Two of the petition in his December 22, 2016 appeal after his resentencing hearing. (Doc. 10, Ex. 27). In overruling the assignment of error, the Ohio Court of Appeals determined that petitioner's claim should have been raised on direct appeal. (Doc. 10, Ex. 29 at PageID 184).[11]

The Sixth Circuit Court of Appeals has consistently recognized that under Ohio law an issue that is not raised by a petitioner on direct appeal is subsequently barred from review based on the doctrine of *res judicata*. *See, e.g., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing procedural default of a claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court); *Rust,* 17 F.3d at 160-61 (finding adequate and independent state procedural rule where new claims raised in his second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as *res judicata* because the petitioner had opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Leroy,* 151 F.2d at 100 (holding as adequate and independent state grounds the procedural default of claims raised for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).[12]

---

[11] Consistent with the Court's review of Ground One of the petition, to the extent that petitioner claims that he is entitled to federal habeas relief because the Ohio trial court failed to comply with Ohio's allied offenses of similar import statute, Ohio Rev. Code § 2941.25—as he did in his application for reopening and appeal—petitioner has failed to state a cognizable ground for habeas relief.

[12] Petitioner committed a second procedural default by failing to pursue a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' August 9, 2017 decision affirming the judgment of the trial court. (*See* Doc. 10,

Accordingly, petitioner has procedurally defaulted and waived his second ground for relief unless he can show cause for the default and actual prejudice, or that failure to consider the defaulted claim will result in a fundamental miscarriage of justice. *See Hoffner*, 622 F.3d at 495.

In his motion to amend, petitioner does seek to advance claims of ineffective assistance of counsel for failure to raise his allied-offenses claim.[13] (Doc. 13). Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray*, 477 U.S. at 488-89. *See also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). In this case, to the extent that petitioner may claim that his appellate counsel was ineffective for raising the defaulted claims on direct appeal, petitioner defaulted this claim

---

Ex. 29). Although petitioner later attempted to obtain a delayed appeal with the Ohio Supreme Court, the state's highest court denied petitioner leave to pursue such an appeal. (*See* Doc. 10, Ex. 32, 33, 34). The Sixth Circuit has held that the Ohio Supreme Court's unexplained entry denying a motion for leave to file a delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *see also Baker v. Bradshaw,* 495 F. App'x 560, 565 (6th Cir. 2012) (citing *Bonilla* in pointing out that "[t]his court has held that violation of . . . the timeliness requirements for an appeal to the Ohio Supreme Court . . . constitute[s] adequate and independent state grounds to preclude hearing an untimely claim on the merits"). Here, as in *Bonilla* and *Baker*, because petitioner failed to pursue a timely appeal to the Ohio Supreme Court and the Ohio Supreme Court denied petitioner leave to file a delayed appeal, the state's highest court never had the opportunity to consider the merits of the claims alleged in the petition.

[13] Petitioner contends that trial counsel was ineffective for failing to object to the alleged allied-offenses error during trial or at his original sentencing and that his appellate counsel was ineffective for failing to raise the claim at his appeal following his resentencing hearing. (*See* Doc. 13 at PageID 367, 369). However, petitioner has procedurally defaulted these claims. First, he failed to raise trial counsel's alleged ineffectiveness on direct appeal or on further appeal to the Ohio Supreme Court. *See, e.g., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing procedural default of a claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court). Second, with respect to his claim that appellate counsel was ineffective for failing to raise the claims during his appeal following his resentencing hearing, counsel did in fact raise his allied offenses claim as an assignment of error on appeal. (*See* Doc. 10, Ex. 27 at PageID 160). As noted above, however, the Ohio Court of Appeals overruled his assignment of error upon finding that the claim had to be raised on direct appeal. (Doc. 10, Ex. 29). Because the ineffective assistance of appellate counsel on direct appeal could constitute cause for petitioner's failure to raise the claim on his original direct appeal, the Court will focus on this claim.

by first failing to file a timely application to reopen his appeal. (*See* Doc. 10, Ex. 15, 17). In

denying the application, the Ohio Court of Appeals found that petitioner's application was

untimely and that he failed to provide good cause excusing the untimely filing. *See Baker v.

Bradshaw*, 495 F. App'x 560, 566 (6th Cir. 2012) ("an untimely Rule 26(B) application is an

adequate and independent state ground that results in a claim being procedurally defaulted").

Petitioner also committed a second procedural default with respect to this claim by failing to

present his ineffective assistance of counsel claims in a subsequent appeal to the Ohio Supreme

Court. Therefore, because petitioner's ineffective assistance of appellate counsel claims are

themselves defaulted, they do not constitute cause for the default of the underlying claims for

relief. *See Murray,* 477 U.S. at 488-89; *Edwards,* 529 U.S. at 452 (2000); *Burroughs,* 411 F.3d

at 668. Accordingly, petitioner has not demonstrated cause to overcome the default of his

claims.

Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will

occur if his procedurally-defaulted claims for relief are not considered or, in other words, that the

alleged errors "probably resulted in the conviction of one who is actually innocent." *See

Murray,* 477 U.S. at 495–96. *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370

F.3d at 498. To establish a credible claim of actual innocence sufficient to excuse his procedural

default, petitioner must "support his allegations of constitutional error with new reliable

evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324.

Petitioner must also show "it is more likely than not that no reasonable juror would have

found [him] guilty beyond a reasonable doubt" in light of all the evidence, including that

evidence alleged "to have become available only after the trial." *Id.* at 327–28. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. The Court notes that actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). *See also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998). The actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Schlup,* 513 U.S. at 321.

Petitioner has failed to establish a credible claim of actual innocence under the *Schlup* standard, as he has not supported his allegations of constitutional error with any new evidence of actual innocence. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup,* 513 U.S. at 316. Petitioner has not demonstrated that his procedural defaults should be excused under the "fundamental miscarriage of justice" exception. Therefore, petitioner has procedurally defaulted and waived the claims raised in Ground Two the petition.

Accordingly, in sum, having found that Ground One of the petition is not cognizable in federal habeas corpus and Ground Two is procedurally defaulted and waived, the petition should be denied with prejudice.

### IV. PETITIONER'S MOTIONS FOR STAY AND TO AMEND SHOULD BE DENIED.

As noted above, petitioner has filed a motion to stay this action based on three motions.

(*See* Doc. 6. *See also* Doc. 13 at PageID 366). Two of these motions have already been ruled on. On February 13, 2019, the Ohio Supreme Court denied petitioner's complaint for a writ of mandamus and his motion for judicial notice. Accordingly, a stay is not warranted based on these motions.

A stay is likewise not warranted based on petitioner's October 10, 2018 motion to vacate a void sentence, which remains pending in the trial court. As he does in Ground Two of the petition, in the motion petitioner claims that his consecutive sentences for aggravated robbery are allied offenses of similar import. (*See* Doc. 10, Ex. 39). However, in ruling on petitioner's June 1, 2018 motion to vacate a void sentence, the trial court has already ruled that petitioner's claims challenging his sentence had to be raised on direct appeal and were now barred by *res judicata*. (*See* Doc. 10, Ex. 36). The Court of Appeals similarly found that petitioner's allied offenses assignment of error should have been brought on direct appeal and was now barred under the doctrine of *res judicata*. (*See* Doc. 10, Ex. 29). In any event, because, for the reasons stated above, petitioner has procedurally defaulted and waived these claims for relief, his pending motion does not warrant a stay in this action and his motion (Doc. 6) should be **DENIED**.

Petitioner's motion to amend (Doc. 13) should also be **DENIED**. For the reasons discussed above, petitioner's proposed additional grounds for relief are procedurally defaulted and do not constitute cause to excuse the defaults of the claims presented in his original petition.[14]

---

[14] Petitioner also contends in proposed Ground Three of the motion to amend that the trial court did not make factual findings in support of consecutive sentences, pursuant to Ohio Rev. Code § 2929.41. (*See* Doc. 13 at PageID 368). However, petitioner raises an issue of state-law only which is not cognizable in this federal habeas corpus proceeding. *Cf. Driggins v. Lazaroff*, No. 1:14cv919, 2015 WL 6957219, at *1, *31 (N.D. Ohio Oct. 27, 2015) (citing *Wilson v. Corcoran*, 562 U.S. 1, 8 (2010); *Oregon v. Ice*, 555 U.S. 160, 163 (2009)); *Hoffman v. Tribley*, No.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. In light of this recommendation, respondent's motion to dismiss (Doc. 11) be **DENIED as moot**.

3. Petitioner's motion for a stay (Doc. 6) and motion to amend (Doc. 13) be **DENIED.**

4. A certificate of appealability should not issue with respect to any of the claims for relief alleged in the petition, which this Court has concluded are non-cognizable or barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[15]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY**

---

13-10868, 2013 WL 1137353, at *2 (E.D. Mich. Mar. 19, 2013) (and cases cited therein) ("Regarding consecutive sentencing, the application of state sentencing laws governing consecutive sentencing does not present a federal constitutional question but merely an issue of state law which is not cognizable on habeas review."). *See also Floyd v. Alexander,* 148 F.3d 615, 619 (6th Cir. 1998) (holding that although the trial court may have violated a state criminal rule in changing the petitioner's sentence from concurrent to consecutive sentences in his absence, "this error does not . . . constitute a violation of procedural due process of law," but rather is an alleged violation of state law "that is not cognizable in a federal habeas corpus proceeding"); *Sneed v. Donahue,* 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the state prisoner's aggregate prison sentence "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding").

[15] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his time-barred grounds for relief. *See Slack,* 529 U.S. at 484.

petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R.

App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


     *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

ANDRE D. WASHINGTON,                    Case No. 1:18-cv-709
     Petitioner,

                                          Dlott, J.
     vs.                                      Bowman, M.J.

WARDEN, NORTH CENTRAL
CORRECTIONAL INSTITUTION,
     Respondent.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).