### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**ANDRE D. WASHINGTON,**

          **Petitioner,**              **Case No. 1:18–cv–709**
                                  **JUDGE DOUGLAS R. COLE**
        **v.**                      **Magistrate Judge Bowman**

**NEIL TURNER, Warden, North Central Correctional Institution,**

          **Respondent.**

### <u>OPINION AND ORDER</u>

This cause comes before the Court on the Magistrate Judge's July 16, 2019 Report and Recommendation ("R. & R.") (Doc. 23). Andre Washington ("Petitioner" or "Washington") filed timely objections. (*See* Doc. 29). As required by 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), this Court has made a de novo review of the record in this case. For the reasons more fully set forth below, the Court **OVERRULES** Washington's Objections (Doc. 29) and **ADOPTS** the Magistrate Judge's R. & R. (Doc. 23). Accordingly, the Court **DISMISSES** the Petition (Doc. 1) **WITH PREJUDICE**. As reasonable jurists could not disagree with this conclusion, Washington is denied a certificate of appealability and the Court certifies to the Sixth Circuit that any appeal would be objectively frivolous. Therefore, Washington should not be permitted to proceed *in forma pauperis*. The Court **ORDERS** the Clerk to terminate the case.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.    The Facts Leading To Washington's Conviction.**

The Ohio Court of Appeals established the following facts giving rise to

Washington's conviction and sentence:

> During the early afternoon of February 5, 2003, Jeremy Kotzbauer was
> working alone at his family's business, Natural Life Nutrition, when
> Washington came into the store and told Jeremy that somebody was
> "peeping" his car. Concerned, Jeremy looked out into the parking lot.
> (We use first names to distinguish between the Kotzbauer brothers.)
> Seeing nothing unusual, Jeremy turned around to find Washington
> pointing a gun at his face and demanding all the money in the cash
> register. Jeremy took the money out, placed it in a brown paper bag, and
> gave it to Washington. Washington then demanded the keys to Jeremy's
> car. As Washington took Jeremy to the back room to get his car keys,
> Jeremy tripped the silent alarm.
>
> Washington left the store, got into Jeremy's car, and drove away. As
> Washington left, Jeremy's brother, Nathan, pulled into the parking lot.
> Jeremy told his brother what had happened, and Nathan proceeded to
> follow Jeremy's car. For the next twenty minutes, Nathan followed
> Washington as he drove Jeremy's car. In the futile hope of hastening his
> escape, Washington decided to take Jeremy's car onto northbound
> Interstate 75, where Nathan continued to follow. Unfortunately for
> Washington, a traffic accident made the typically bottlenecked traffic on
> the interstate even slower than usual. As they drove on the interstate,
> Nathan spotted an Arlington Heights police cruiser pulled over on the
> shoulder. Officer Chris Bundrew was issuing another driver a traffic
> citation. Nathan informed Bundrew of what had occurred. Bundrew
> then joined the pursuit.
>
> Shortly thereafter, Bundrew stopped Jeremy's car. The driver got out of
> Jeremy's car, lay on the ground, and was placed in custody. Of course,
> the driver was Washington, and a search of his person uncovered the
> stolen money as well as some crack cocaine in his pocket. A search of
> Jeremy's car turned up the gun used in the robberies. Jeremy later
> described the robber as an African-American male, roughly between 6'2"
> and 6'3", of unknown weight, and wearing a winter jacket, skullcap, and
> blue gloves.
>
> Later that night, the police showed Jeremy a one-man holding area
> where they were keeping Washington. They had already told Jeremy

2

that they had the man who had robbed the store and now asked Jeremy if he could identity that man. Jeremy identified Washington as the robber. Nathan was shown a Polaroid photograph of only Washington and asked if the person in the photograph was the robber. Nathan identified Washington's picture as the person who had robbed his brother and the store.

(Doc. 10, Ex. 9, #100–02).[1]

## B. After Being Convicted By A Jury, Washington Challenged The Conviction On Direct Appeal.

On February 13, 2003, a grand jury in Hamilton County, Ohio, indicted Washington on two counts of aggravated robbery, two counts of robbery, and one count of possession of cocaine. (Doc. 10, Ex. 1, #51–54). He pled not guilty to all charges and the case proceeded to trial. (Doc. 10, Ex. 2, #55). On August 20, 2003, a jury convicted Washington on all counts. (Doc. 10, Ex. 3, #56–64).

The next month, on September 5, 2003, the judge sentenced Washington to a total of twenty years in prison. (Doc. 10, Ex. 4, #65). Specifically, the judge sentenced Washington to consecutive eight-year prison terms for the aggravated robbery convictions: one count based on the theft of currency from the Natural Life Nutrition Center and the other based on the motor vehicle theft from Jeremy Kotzbauer. The judge also sentenced Washington to two, three-year gun specifications on these counts, which the judge ordered Washington to serve concurrently, but consecutively to the sentences imposed for his other convictions. Washington also received a one-year sentence for his cocaine possession conviction, which the judge ordered to be

---

[1] Under 28 U.S.C. § 2254(e)(1), in this habeas proceeding, the state court's factual determinations are presumed correct unless Washington rebuts that presumption by clear and convincing evidence. Because Washington does not object to these facts, the Court presumes the Ohio Court of Appeals' findings are correct. *See McAdoo v. Elo*, 365 F.3d 487, 493–94 (6th Cir. 2004).

consecutive to the aggravated robbery sentences. (*See id.* at #66). The judge merged the two robbery counts with the respective aggravated robbery counts, and thus did not sentence Washington on the robbery counts. (*See id.* at #65–69). At the sentencing hearing, the trial court advised Washington that he "could have up to five years of post-release control." (Doc. 10-1, #324). But the judgment entry did not specify the post-release control term. Instead, it simply stated that "as part of the sentence in this case, the defendant is subject to the post release control supervision of R.C. 2967.28." (Doc. 10, Ex. 4, #66).

Washington then retained different counsel, and on September 23, 2003, filed a timely notice of appeal to the Ohio Court of Appeals. (Doc. 10, Ex. 6, #72). In his brief, Washington alleged two assignments of error:

1.  The jury committed prejudicial error in finding Washington guilty of Aggravated Robbery, Robbery, and Possession of Cocaine as the verdict was against the manifest weight of the evidence.

2.  The identification of Andre Washington by Nathan Kotzbauer and Jeremy Kotzbauer should be suppressed as it was unreasonably suggestive and violated Washington's right to a fair trial under the Ohio and United States Constitutions.

(Doc. 10, Ex. 7, #80, 83). On November 3, 2004, the Ohio Court of Appeals overruled Washington's objections and affirmed the trial court's judgment. (Doc. 10, Ex. 9, #100–05). Washington did not appeal to the Ohio Supreme Court.

## C.  Six Years After His Direct Appeal Concluded, Washington Sought Post-Conviction Relief By Moving For A New Trial.

Several years later, on May 17, 2010, Washington filed with the Ohio state trial court a "delayed motion for a new trial to correct a void judgment or sentence

and defective indictment of robbery and aggravated robbery." (Doc. 10, Ex. 10, #106–11). Washington challenged his indictment because it did not expressly charge the *mens rea* element of the aggravated robbery and robbery charges. (*Id.* at #107). A few days later, on May 24, 2010, the trial court denied Washington's motion. (Doc. 10, Ex. 12, #114).

Washington appealed this judgment to the Ohio Court of Appeals. (Doc. 10, Ex. 13, #115). On November 12, 2010, the Ohio Court of Appeals *sua sponte* dismissed Washington's appeal because he failed to file an appellate brief. (Doc. 10, Ex. 14, #116). Washington did not seek further review in the Ohio Supreme Court.

### D. Washington's Motion For A New Trial Failed, So He Moved To Reopen His Direct Appeal.

Washington next filed an application to reopen his direct appeal on February 9, 2012, pursuant to Ohio Appellate Rule 26(B). (Doc. 10, Ex. 15, #117–29). Washington argued both his trial and appellate counsel were ineffective for failing to raise a claim that his convictions amounted to allied offenses of similar import under Ohio Revised Code § 2491.25. (*See id.* at #128). Rule 26(B) requires a defendant to file for reopening "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Ohio App. R. 26(B)(1). On March 7, 2012, the Ohio Court of Appeals denied Washington's application, finding that he had not provided sufficient reasons for the roughly eight-year lapse between the journalization of the appellate judgment and his application to reopen. (Doc. 10, Ex. 17, #132). Washington did not appeal to the Ohio Supreme Court.

### E. After The Court Of Appeals Rejected Washington's Untimely Motion To Reopen His Direct Appeal, He Moved To Vacate His Sentence.

Approximately four years later, on April 11, 2016, Washington filed a "motion to vacate a void sentence." (Doc. 10, Ex. 19, #135). In the motion, he complained that the trial judge did not advise him, at his sentencing, how long he would be subject to post-release control or the potential consequences of violating the terms of that post-release control. (*Id.* at #136). The trial court appointed Washington counsel and, on August 31, 2016, held a hearing on his motion. (Doc. 10, Ex. 20, #140; Doc. 10, Ex. 21, #141–43).

At the hearing, Washington argued that his sentence was void because the trial judge did not properly impose post-release controls. He claimed his void sentence entitled him to a new sentencing hearing, at which he would argue that his two aggravated robbery convictions were allied offenses of similar import and should merge for sentencing purposes. (Doc. 10-2, #330–31). The judge stated he would not disturb Washington's original sentence, but noted that it appeared Washington should have been sentenced to consecutive sentences for the firearm specifications, which would have resulted in a twenty-three-year sentence instead of the twenty-year sentence originally imposed. (*Id.* at #334–35). Because Washington argued the original sentencing judge never advised him about post-release control, the trial judge advised Washington that he would be subject to mandatory post-release control for five years once he served his sentence, and also advised him of the consequences of violating its terms. (*Id.* at #335–36).

6

The trial court ultimately denied Washington's motion to vacate on September 19, 2016. (Doc. 10, Ex. 22, #144). The court entered a *nunc pro tunc* sentencing order on November 23, 2016, imposing the same sentence but including the required post-release control information. (Doc. 10, Ex. 21, #141–43).

On September 6, 2016, Washington filed a notice of appeal to the Ohio Court of Appeals. (Doc. 10, Ex. 23, #145). Through his counsel, Washington raised two assignments of error in his appellate brief:

1.  The trial court erred by failing to comply with the principles and purposes of sentencing at a *de novo* resentencing hearing.

2.  The trial court erred when it failed to merge allied offenses of similar import under R.C. 2941.25 and as such prison on the firearm specifications on those counts cannot be given.

(Doc. 10, Ex. 27, #165).

The Ohio Court of Appeals overruled Washington's assignments of error and affirmed the trial court's decision on August 9, 2017. (Doc. 10, Ex. 29, #185). The Court of Appeals ruled that the trial court properly limited the scope of the resentencing hearing to the issue of post-release control. (*Id*.). The appeals court further held that Washington's allied-offenses argument should have been brought on direct appeal, and that his failure to do so meant res judicata now barred his attempt to raise that argument. (*Id*. at #184–85).

On October 4, 2017, Washington filed a notice of appeal and a motion for a delayed appeal to the Ohio Supreme Court, attempting to appeal the August 2017 decision. (Doc. 10, Ex. 32, #193–94; Doc. 10, Ex. 33, #195–99). He claimed he could

not timely file a notice of appeal because the prison officers failed to notify him that they issued him a pass to access the mailroom. (Doc. 10, Ex. 33, #195).

Subsequently, on November 13, 2017, Washington filed a "Motion Invoking Appellate Court's Inherent Power to Vacate its Void Judgment" in the Ohio Court of Appeals. (Doc. 10, Ex. 30, #186–91). In it, he asked the appeals court to vacate its 2003 direct appeal decision. The court overruled Washington's motion on December 5, 2017. (Doc. 10, Ex. 31, #192).

On December 6, 2017, the Ohio Supreme Court denied his motion for a delayed appeal of the August 9, 2017 appeals court decision. (Doc. 10, Ex. 34, #200).

### F.    Washington Files Several More Motions Seeking To Vacate His Sentence.

On June 1, 2018, Washington again filed a motion to vacate his 2003 sentence. (Doc. 10, Ex. 35, #201–11). The Ohio trial court denied his motion on June 12, 2018, because the issues he raised "had to be raised in a direct appeal and are now barred by res judicata." (Doc. 10, Ex. 36, #212). Washington next filed a motion in the Ohio Court of Appeals on October 2, 2018, seeking to vacate his 2016 sentence. (Doc. 10, Ex. 37, #213–17). On the same day, Washington filed a "Motion for Notice of Filing of Judgments Pursuant to Ohio Civ. R. 58(B)." (Doc. 10, Ex. 38, #218). A couple of weeks later, on October 16, 2018, the Ohio Court of Appeals dismissed his appeal.

In the meantime, on October 10, 2018, Washington filed another motion in the trial court to vacate his 2003 sentence, arguing that sentence was void because he should have been sentenced separately on each aggravated robbery conviction. (Doc. 10, Ex. 39, #221–28). That motion is still pending in the trial court.

8

Washington also continued to seek relief in the Ohio Supreme Court. On March 7, 2018, he filed a complaint seeking a writ of mandamus. (Doc. 10, Ex. 40, #229–43). The Ohio Supreme Court dismissed his complaint on May 23, 2018. (Doc. 10, Ex. 42, #251). Washington filed a second complaint for a writ of mandamus on December 3, 2018, (Doc. 10, Ex. 43, #252–68), which the Ohio Supreme Court dismissed on February 13, 2019.

### G. Washington Seeks Habeas Relief In Federal Court.

On September 11, 2018, Washington initiated this habeas corpus action. (*See* Pet. for Habeas Corpus ("Pet."), Doc. 1 #1–17). He raised two alleged errors: (1) the trial court "failed to comply with principles and purposes of sentencing at de novo resentencing hearing" under Ohio Revised Code § 2929.11; and (2) the trial court failed to merge allied offenses of similar import in violation of the Double Jeopardy Clause of the United States Constitution. (Pet. at #5, 7). Neil Turner (the "Warden" or "Respondent"), the Warden of the prison in which Washington is housed, filed a motion to dismiss the petition, (Doc. 11), to which Washington responded. (Doc. 15). Respondent argues Washington's grounds for relief are time-barred. (*See* Mot. to Dismiss, Doc. 11, #339). More specifically, Respondent claims the 2016 *nunc pro tunc* sentencing entry did not restart the statute of limitations because it served only to correct a clerical error in the original sentencing order. (*See id.* at #353–55). According to Respondent, because the 2016 sentencing order did not constitute a "new, worse-than-before sentence," it does not reset the limitations period under the Sixth Circuit's decision in *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2015).

After filing his petition, Washington moved to stay this action. (Doc. 6, #34–36). Washington said he had an appeal pending in Ohio's First District Court of Appeals at the time. (*See id.* at #34). He later clarified that he sought the stay because of three pending motions: his December 3, 2018 complaint for a writ of mandamus in the Ohio Supreme Court, a January 7, 2019 motion for the Ohio Supreme Court to take judicial notice, and an October 10, 2018 motion to vacate. (Doc. 13, #366). The Ohio courts have since ruled on these motions, except for the motion to vacate that is still pending in the trial court.

Washington also filed a motion to amend/correct his habeas petition. (Doc. 13, #365–70). In it, he seeks to amend his petition to include two ineffective assistance of counsel claims. First, he argues his trial counsel was ineffective for failing to object when the judge imposed consecutive sentences for his two aggravated robbery convictions, which he maintains were allied offenses of similar import under Ohio Revised Code § 2941.25. (*See* Doc. 13 at #367–68). Second, he claims his appellate counsel on his appeal after his resentencing in 2016 was ineffective for failing to attack his consecutive sentences on appeal following that resentencing. (*Id.* at #369–70).

On July 16, 2019, the Magistrate Judge issued her Report and Recommendations. (*See* R. & R., Doc. 23, #444–69). Rather than addressing Respondent's argument that Washington's petition is time-barred, the Magistrate Judge instead concluded that: (1) Washington's first ground for relief was non-cognizable in habeas, as he was seeking to contest the state court's application of

10

state law; and (2) Washington had procedurally defaulted his second ground for relief. (*See id.* at #444 n.1, 456–58, 462–65). As to the latter, she noted that, although Washington presented the allied-offenses argument to the Ohio appeals court in the 2016 appeal after his resentencing proceeding, the Ohio court held that Washington had been required to present that argument during his direct appeal. (*See id.* at #462). Thus, res judicata barred him from raising it in the resentencing appeal. (*See id.*).

Although the Magistrate Judge recognized that Respondent had not raised the procedural default argument in his opposition to the habeas petition, she found that because Washington "has the opportunity to be heard on the matter by way of objections to the instant Report and Recommendation, the district court does not abuse its discretion in *sua sponte* raising the issue of procedural default." (*Id.* at #444 n.1). Based on her conclusions that Washington's claims were either non-cognizable or procedurally defaulted, the Magistrate Judge ultimately recommended that this Court deny Washington's petition (Doc. 1), deny Respondent's motion to dismiss as moot (Doc. 11), and deny Washington's motions to stay and amend (Docs. 6, 13).

Washington filed timely objections to the Magistrate Judge's Report and Recommendations.[2] (*See* Doc. 29). Those objections are now before this Court.

---

[2] In addition to the objections discussed below, it appears that Washington also argues that the 2016 resentencing restarted the AEDPA statute of limitations. (*See* Petitioner's Obj. (Doc. 29) at #481–82). The Magistrate Judge did not reach the statute-of-limitations issue, nor did she need to reach this issue, because she determined that Washington's claim was procedurally defaulted. (R. & R. at #444 n.1). Because this Court agrees that the claims here are all procedurally defaulted, the Court concludes it likewise need not address the statute-of-limitations issue.

11

# DISCUSSION

## A.    Standard Of Review.

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## B.    Analysis.

### 1.    Ground One: The Ohio Trial Court Failed To Perform A De Novo Resentencing Hearing Under Ohio Revised Code § 2929.11.

Washington does not raise any objections to the Magistrate Judge's decision on Ground One. In her Report, she found that Washington could not use a federal habeas petition to attack perceived errors of state law. Thus, the Magistrate Judge concluded that the Court "lacks jurisdiction to consider any claim that the trial court erred by failing to comply with Ohio Rev. Code § 2929.11 or other Ohio sentencing laws." (R. & R. at #457). As Washington did not object on this issue, he forfeits the right to contest the Magistrate Judge's conclusions. *See Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596–97 (6th Cir. 2006) ("[O]nly [the] specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."); *see also People v. Hoover*, 377 F. App'x 461, 462 (6th Cir. 2010)

12

("Parties … forfeit appellate review of arguments not raised as objections to a magistrate's report.").

Moreover, even were that not the case, the Magistrate Judge is correct on the limitations inherent in habeas relief. A petitioner must show a violation of the Constitution, laws, or treaties of the United States. Claiming that a State violated state law does not cut it. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). And attempts to recast a State's alleged error in applying state law as a due process violation, as Washington seeks to do, works only in the rarest of circumstances, none of which apply given the allegations here. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (noting that when a habeas claim is based on an alleged mistake in the application of state law, "federal habeas review … is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation"); *Dickson v. Franklin*, 130 F. App'x 259, 264 (10th Cir. 2005) (noting that when a habeas petition relies on an alleged failure to properly apply state law, the petitioner must show that the application was "arbitrary in the constitutional sense") (quotation and citation omitted). Accordingly, the Court **ADOPTS** the Magistrate Judge's ruling dismissing Ground One of Washington's habeas petition.

2. **Ground Two: The Ohio Trial Court Erred By Failing To Merge His Aggravated Assault Convictions As Allied Offenses Of Similar Import.**

Washington raises three objections to the Magistrate Judge's conclusions on Ground Two: (1) the *nunc pro tunc* sentencing order in the fall of 2016 constituted a new sentence, allowing him to raise any errors in that sentence (including the allied-offenses issue) on appeal; (2) the Court should allow him to amend his petition and present an ineffective assistance of counsel claim because his appellate attorney in the resentencing proceedings failed to present the allied-offenses argument in the manner that Washington wanted; and (3) the Court should excuse any procedural default that may otherwise have arisen due to his failure to appeal the allied-offenses issue to the Ohio Supreme Court in the appeal after the resentencing proceeding, because the jail's mail room failed to timely mail his appeal to the Ohio Supreme Court. (*See* Petitioner's Obj. to R. & R. ("Petitioner's Obj."), Doc. 29). The Court considers—and rejects—each objection below.

a. **The *Nunc Pro Tunc* Sentencing Order Did Not Constitute A "New" Sentence That Would Allow Washington To Raise Any Objection To His Sentence.**

The Magistrate Judge found that because Washington had procedurally defaulted his allied-offenses argument, he could not rely on it in habeas. In particular, Washington did not present the argument during his first direct appeal, and when he sought to raise it after his new sentencing hearing in 2016, the state appeals court found it barred by res judicata, and therefore declined to reach the merits of the

argument. The Magistrate Judge concluded that res judicata was an adequate and independent state law ground that precluded habeas relief. (*See* R. & R. at #462–63).

In Washington's first objection to that ruling, he appears to argue (his objection is not the model of clarity) that the resentencing hearing in 2016 was a de novo hearing, and thus res judicata did not apply. (*See id.* at #484). Essentially, he is claiming that, because res judicata should not have applied, it could not provide an "adequate" state law ground for procedural default. But Washington is simply wrong regarding the contours of res judicata under Ohio law as applicable to resentencing hearings, and thus his first objection lacks merit.

In enacting the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress recognized the equal obligation of state courts to protect the constitutional rights of criminal defendants. To prevent needless friction between the state and federal courts, AEDPA requires a state defendant with federal constitutional claims to fairly present those claims to the state court for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. §§ 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).

If a petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review, up to and including the state's highest court, as a general matter he cannot rely on those claims in seeking federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999); *Harris v. Reed*, 489 U.S. 255, 260–62 (1989); *McBee v. Grant*, 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989) (explaining that the Sixth Circuit strictly

applies the Supreme Court's requirement of fair presentment). And the notion of "fairly presenting" the claims also requires that the petitioner follow state procedural rules. If the petitioner fails to do so, and the state court thus declines to reach the merits of the federal claim, the claim is "procedurally defaulted," and not available in habeas. This occurs so long as the state procedural rule at issue is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris*, 489 U.S. at 260–62.

One such "independent" and "adequate" state procedural rule is a rule requiring a defendant to bring certain claims on direct appeal, rather than in a later collateral attack. *See, e.g.*, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Indeed, the Sixth Circuit has consistently recognized that when a state appellate court relies on res judicata to bar a petitioner's claim in a later appeal that should have been brought on direct appeal, the res judicata finding serves as an independent and adequate ground for procedural default purposes. *See, e.g.*, *id.* at 160–61 (finding the state procedural rule independent and adequate where new claims raised in the petitioner's second motion for leave to file a delayed direct appeal were barred by res judicata because the petitioner had an opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985) (holding the state court's decision to apply res judicata and bar the petitioner's claims raised for the first time in a petition for habeas corpus as independent and adequate state grounds for procedural default because the petitioner failed to raise those claims on direct appeal).

16

The Ohio appeals court relied on that very procedural rule in Washington's 2016 appeal after his resentencing. In particular, the appeals court found that res judicata prevented it from reaching the merits of the allied-offenses issue, as Washington instead was required to raise that issue on his first direct appeal. (Doc. 10, Ex. 29, #184–85). Thus, in this habeas proceeding, the Magistrate Judge determined that, as a result, Washington's allied-offenses argument was procedurally defaulted. (R. & R. at #462–63).

Washington seeks to escape this result by arguing that his resentencing hearing in 2016 was de novo, and thus he could raise any argument (including on appeal) that was available to him. But Ohio law says otherwise.

The Ohio Supreme Court explained the permissible scope of an appeal from a resentencing order in *State v. Fischer*, 942 N.E.2d 332, 341–43 (Ohio 2010). There, after Fischer was sentenced, a timely direct appeal followed, and his convictions and sentence were affirmed. Several years later, Fischer appealed and argued his sentence was void because the court had failed to properly advise him of his post-release-control obligations, as required by *State v. Bezak*, 114 Ohio St. 3d 94 (2007)—which was also the argument that Washington raised as the basis for re-opening his sentence in the state court proceeding in this matter. The court of appeals agreed with Fischer and remanded for resentencing. Fischer then again appealed his second sentence. The case made its way to the Ohio Supreme Court, which held that the sentence was void (as opposed to voidable) *but only as to the post-release control obligations* portion of the sentence. In other words, the resentencing hearing "to

which an offender is entitled under *Bezak*" is not a full-blown sentencing hearing, but rather "is limited to proper imposition of postrelease control." *Fischer*, 942 N.E.2d at 341. Likewise, then, an appeal from that new sentencing decision is not a "first direct appeal as of right," but is instead limited to consideration of that void portion of the sentence. *Id.* at 340–41. The court explained that Fischer, "having already had the benefit of one direct appeal, could not raise any and all claims of error in a second, successive appeal." *Id.* at 342.

One potential wrinkle, though, in terms of applying *Fischer* here—*Fischer* does not deal specifically with a *nunc pro tunc* sentencing order like the one the Ohio court imposed in 2016. But Ohio's Eighth District Court of Appeals has applied *Fischer* to a case involving a *nunc pro tunc* sentencing order. In *State v. Castro*, No. 97451, 2012 WL 1758695, at *1 (Ohio Ct. App. May 17, 2012), Castro claimed that he was not properly advised about post-release control at his first sentencing. The trial court denied Castro's motion for a full resentencing and instead issued a *nunc pro tunc* entry advising him about post-release control. *Id.* Castro appealed, arguing the trial court erred in failing to address whether his convictions should have merged as allied offenses of similar import. *See id.* Because Castro failed to raise this particular issue on direct appeal, the Eighth District held that the trial court correctly refused to address the issue at the resentencing since the argument was barred by res judicata. *See id.* at *2. The court explained that res judicata bars claims that could have been raised on direct appeal, and that "it is well settled that the issue of allied offenses is not properly raised during resentencing but rather on direct appeal." *Id.* at *1.

18

Washington's case falls squarely under *Fischer* and *Castro*. Washington failed to raise his allied-offenses argument on direct appeal after his first sentencing. Therefore, this argument is barred by res judicata under Ohio law, even though a shortcoming in the postconviction release aspect of his sentence required later correction. And that Ohio law procedural rule thus provides an adequate and independent state ground for denying his claim, in turn preventing him from raising it in federal habeas proceedings.

> **b.** **Washington Cannot Rely On Alleged Ineffective Assistance Of Counsel To Avoid The Procedural Default.**

Separately, Washington objects to the Magistrate Judge's determination regarding his ineffective assistance of counsel claims. In particular, in his objections he appears to address two separate sources of ineffective assistance. First, he claims that his trial counsel was ineffective for failing to raise the allied-offenses argument. Second, it appears[3] that he claims that his appellate counsel during the resentencing proceeding in 2016 was ineffective either (1) for failing to raise the allied-offenses issue, or (2) for failing to raise his 2003 trial counsel's ineffectiveness in failing to raise that issue in connection with his original sentencing. (Petitioner's Obj. at #488–92). In his objections, though, he argues not that he should be allowed to proceed on these ineffective assistance claims themselves, but rather that the two different

---

[3] His objections are somewhat muddled, particularly as to his allegations about his 2016 appellate counsel's alleged ineffectiveness in failing to raise issues relating to his 2003 trial counsel's alleged ineffectiveness. As Washington is proceeding pro se, the Court tries to analyze the objections based on the most favorable reading it can give them.

instances of ineffective assistance constitute cause to excuse the procedural default of his allied-offenses argument (as discussed above).

To be sure, a petitioner's procedural default of a particular claim does not always bar habeas review. Under AEDPA, if the petitioner can demonstrate (1) cause for the default, coupled with actual prejudice as a result of the alleged violation of federal law, or (2) that the failure to consider the claims will result in a fundamental miscarriage of justice, the federal habeas court can still review his claim. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). And, to Washington's credit, an ineffective assistance of counsel claim can provide cause excusing a procedural default, unless the ineffective assistance of counsel claim is itself procedurally defaulted. *See Murray v. Carrier*, 477 U.S. 478, 488–89 (1986); *see also Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 667–68 (6th Cir. 2005).

But those principles provide Washington no help here. To the extent Washington points to alleged ineffective assistance of his 2003 trial counsel, any such claims are procedurally defaulted. Washington had new counsel on his direct appeal, but failed to raise any claim of ineffective assistance of trial counsel. That waives any such claim, absent ineffective assistance of appellate counsel. *See, e.g.*, *Burroughs*, 411 F.3d at 667–68 (finding the failure to raise ineffective assistance of counsel claims on direct appeal resulted in procedural default). And, if Washington is arguing that his appellate counsel on his first direct appeal was ineffective for failing to raise the ineffective assistance of trial counsel, this latter claim itself is also defaulted because Washington failed to file a timely application to reopen his appeal under Ohio

Appellate Rule 26(B). (*See* Doc. 10, Ex. 15; Doc. 10, Ex. 17). That Rule requires an applicant to apply for reopening his appeal within 90 days after his appeal is journalized, unless the applicant can demonstrate good cause for filing later. Ohio App. R. 26(B). Here, Washington missed the 90-day deadline (by roughly eight years), and the Ohio appeals court found that Washington failed to provide good cause excusing that untimely filing. (Doc. 10. Ex. 17, #132). An untimely Rule 26(B) application is an independent and adequate state ground that results in procedural default of ineffective assistance of appellate counsel claims. *See Baker v. Bradshaw*, 495 F. App'x 560, 566 (6th Cir. 2012).

To the extent that Washington is instead arguing that the appellate counsel in the appeal from his 2016 "resentencing" proceeding was ineffective for failing to raise certain claims, this argument falls short, too. First, Washington initiated the 2016 resentencing proceedings by filing a motion to vacate his 2003 sentence. This is best understood as a form of collateral attack on his sentence. That is, he had already been convicted and sentenced, and both had been upheld on appeal—years earlier. Thus, the motion in 2016 was necessarily a post-conviction attack on an already final sentence. This matters because federal law is clear that a criminal defendant's right to counsel extends only to his first direct appeal. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Defendants do not have a right to assistance of counsel in postconviction proceedings. *Id*. Because a criminal defendant does not have a right to assistance of counsel, he cannot make a constitutional claim for ineffective assistance in connection with such proceedings. *Id*. ("There is no constitutional right to an

21

attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (citations omitted). Thus, claims based on his appellate counsel's performance in his 2016 resentencing proceedings (or based on his trial counsel's performance in those proceedings, for that matter) are non-starters, at least with regard to any non-void portions of the sentence under attack in that proceeding (i.e., any matters other than those related to the post-release control obligations).[4]

Moreover, even if Washington could assert such claims, the ones he identifies here are fatally flawed on their face. He seems to argue, for example, that his appellate counsel failed to raise the allied-offense issue in the 2016 appeal. But that is simply wrong. Counsel did raise it (*see* Doc. 10, Ex. 27, #160, 168–71)—only to run smack dab into the res judicata problem identified above. (*See* Doc. 10, Ex. 29, #184–85). And, as for the 2016 appeal counsel's "failure" to raise an ineffective assistance claim based on the 2003 trial counsel's performance, any such claim had long been defaulted, as described above, meaning that failure to raise that claim could not constitute ineffective assistance. *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) (holding that it is not ineffective assistance to fail to raise a procedurally defaulted

---

[4] It is an interesting question whether Washington would be entitled to effective assistance of counsel with regard to claims relating to the post-release control portion of his sentence. The Ohio Supreme Court's holding in *Fischer* is that an invalidly imposed post-release control provision renders that portion of the sentence void, not voidable, but that the remedy is that the trial court can reimpose that provision in a new hearing directed solely at that provision. *See Fischer*, 942 N.E.2d at 340–41. Arguably then, an appeal from the new hearing on that provision would be a new direct appeal, and thus perhaps could give rise to a right to counsel under the Sixth Amendment. But presumably that right would extend only to the portion of the sentence properly considered at that hearing.

claim because those claims could not be "clearly stronger" than other potential claims).

In short, Washington has failed to identify any non-defaulted ineffective assistance claim that could provide cause for his default on his underlying claim for relief.

Nor has Washington identified any fundamental miscarriage of justice. A "fundamental miscarriage of justice" means that the alleged errors "probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495–96. Actual innocence, which permits federal habeas review of a procedurally defaulted claim, means "factual innocence, not merely legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this high burden, the petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This requires the petitioner to show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including any evidence allegedly "available only after the trial." *Id.* at 327–28. The actual innocence exception should "remain rare" and should "only be applied in the extraordinary case." *Schlup*, 513 U.S. at 321 (quotation omitted).

Washington did not provide any new evidence of actual innocence. In fact, he has not come forth with any new evidence at all. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is

not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 316.

> **c.** **Washington's Claim That The State Committed "Misfeasance" By Failing To Mail His Supreme Court Appeal Does Not Change The Procedural Default Analysis.**

In his final objection, Washington seems to suggest that any procedural default should be forgiven, due to the fact that the prison in which he is housed allegedly interfered with his ability to timely file an appeal to the Ohio Supreme Court in connection with his 2016 resentencing proceedings. (*See* Petitioner's Obj. at #482–83, 492–94). That objection, however, does nothing to advance his claims. As discussed above, the procedural default on the allied-offenses issue occurred when Washington failed to bring that argument on direct appeal—more than fifteen years ago. (*See* Doc. 10, Ex. 29, #184). And the procedural default on the ineffective assistance claims for trial counsel and direct appeal counsel likewise occurred many years past. Thus, Washington's failure to timely appeal the 2016 decision to the Ohio Supreme Court, for whatever reason, did not disadvantage his habeas claim in any way.

## CONCLUSION

Based on the foregoing, the Court **OVERRULES** Washington's Objections (Doc. 29), **ADOPTS** the Magistrate Judge's R. & R. (Doc. 23), including the refusal to issue a certificate of appealability, **DISMISSES** Washington's Petition (Doc. 1) and **ORDERS** the Clerk to terminate the case.

**SO ORDERED.**

April 27, 2020
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**